UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONALD J.[1] ,**

      **Plaintiff,**

  v.                                 **Civil Action 2:24-cv-1336**
                                       **Judge Sarah D. Morrison**
**COMMISSIONER OF SOCIAL**         **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Ronald J., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply to Defendant's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 6). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.     BACKGROUND

Plaintiff protectively filed his DIB and SSI applications on May 29, 2021, alleging that he became disabled beginning May 25, 2021. Plaintiff's claims were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") subsequently held a telephonic hearing on January 25, 2023, at which Plaintiff, represented by counsel, appeared. A vocational expert ("VE") also appeared and testified. On February 3, 2023, the ALJ issued an unfavorable determination (R. 402–17), which became final on January 22, 2024, when the Appeals Council declined review. (*Id.* at 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ committed reversible error when considering and evaluating administrative findings from state agency reviewers and by finding that Plaintiff could perform his past relevant work without first resolving conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). (Pl's Statement of Errors 6–10, ECF No. 7; Pl's Reply 1–5, ECF No. 10). The undersigned finds that Plaintiff's contentions of error lack merit.

## II.     THE ALJ's DECISION

The ALJ issued the unfavorable determination on February 3, 2023. He initially determined that Plaintiff met the insured status requirements of the Social Security Act through

September 30, 2025. (R. 404.) At step one of the sequential evaluation process,[2] the ALJ found that although Plaintiff had engaged in substantial gainful activity from April 2022 through June 2022, there had been a continuous 12-month period during which Plaintiff had not engaged in such activity. (*Id.* at 404–05.) Accordingly, he limited his findings to the periods when Plaintiff had not engaged in substantial gainful activity. (*Id.* at 405.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc disease; chronic obstructive pulmonary disease ("COPD"); hypertension; and a history of pulmonary embolism and deep vein thrombosis (*Id*.) The ALJ also found that Plaintiff had the non-severe medically determinable impairment of malingering. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 407–09.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot have more than moderate exposure to dust, fumes, odors, gases or other atmospheric pollutants.

(*Id*. at 409.)

At step four, relying upon the testimony of the VE, the ALJ determined that Plaintiff could perform his past relevant work as a housekeeper/cleaner. (*Id.* at 416.)[3] Having found that Plaintiff could perform his past relevant work, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from Plaintiff's alleged July 4, 2017 onset date through the date of the decision (*id.* at 417) and did not proceed to step-five of the sequential evaluation process.

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..") . Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[3] Although the heading in the ALJ's determination indicated that he found that Plaintiff could perform his past positions as a lubrication technician and a housecleaner/cleaner, the ALJ only discussed the housecleaner/cleaner position and indicate that his decision about that position was based on VE testimony. (R. at 416–17.)

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ erred when considering administrative findings from state agency reviewers and by finding that Plaintiff could perform his past relevant work without resolving conflicts between the VE's testimony and the DOT. (Pl's Statement of Errors 6–10, ECF No. 7; Pl's Reply 1–5, ECF No. 10) The undersigned considers these contentions of error in turn and concludes that neither have merit.

A.  **The ALJ's Assessment of the Prior Administrative Findings**[4]

First, Plaintiff contends that the ALJ erred when considering findings from state agency reviewers. Plaintiff particularly contends that the ALJ found that the reviewers' findings about his ability to tolerate respiratory irritants were persuasive, but the ALJ failed to incorporate those findings into Plaintiff's RFC or explain their omission. Plaintiff's contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

---

[4] Because Plaintiff's contentions of error pertain solely to his tolerance for respiratory irritants, the undersigned's discussion is limited to the same.

[5] Because Plaintiff's applications were filed in 2018, they are subject to regulations that govern applications filed after March 27, 2017.

6

Here, the ALJ began by summarizing the state agency reviewers' findings, writing as follows:

> Lynne Torello, M.D., reviewed the evidence on behalf of the State Agency at the initial level on September 13, 2021 and concluded the claimant retained the ability to perform medium exertion work with unlimited exposure to extreme cold, extreme hot, wetness, humidity, vibration, and hazards. Moreover, noting the claimant's COPD, Dr. Torello noted the claimant needed to avoid working around respiratory irritants and should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc., (Exs. 3A; 4A). Indira Jasti, M.D., reviewed the evidence on behalf of the State Agency at the reconsideration level on February 14, 2022 and affirmed Dr. Torello's assessment (Exs. 7A; 8A).

(R. at 415.) The ALJ then explained that he found these findings to be "generally persuasive," and that Plaintiff was more limited than found by the reviewers. He wrote as follows:

> I find these prior administrative medical findings to be generally persuasive as they are consistent with the evidentiary record at the initial and reconsideration levels. However, as noted above, testing performed prior to the claimant's alleged onset date demonstrated ejection fractions of 50% of 35%, which was not noted by the reviewing medical consultant at the reconsideration level. In affording the claimant the benefit of the doubt, *I find the totality of the evidentiary record*, including evidence in the form of testimony by the claimant at the hearing, *is more consistent with the reduced range of light work set forth in the residual functional capacity above, as the limitations therein properly accounts for the claimant's respiratory*, cardiovascular, and musculoskeletal *impairments*.

(*Id.*) (emphasis added.)

As this discussion demonstrates, the ALJ considered and discussed the supportability factor, which requires an ALJ to evaluate the relevance of "objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s)" 20 C.F.R. §§ 1520c(c)(1); 416.920c(c)(1). Although the ALJ did not use the term "supportability," he noted that Drs. Torello and Jasti had reviewed the evidence but that certain ejection test results had not been noted by one of them during one of their reviews. (*Id.*) This discussion also demonstrates that the ALJ considered and discussed the consistency factor—the ALJ explained that the reviewers' findings were generally consistent

7

with the evidentiary record that was available to them. Based on these considerations, the ALJ determined that Plaintiff was less capable than found by the reviewers, and that he could only perform light work instead of medium work.

Even though the ALJ determined that he was less capable than found by the reviewers, Plaintiff nevertheless complains that the ALJ failed to incorporate into his RFC their findings that he should avoid even moderate exposures to "fumes, odors, dusts, gases, poor ventilation, etc." and their finding that his COPD made it necessary for him to avoid working around respiratory irritants. (*Id*. at 459, 475.) Plaintiff notes that the ALJ instead limited him to moderate exposures to respiratory irritants and contends that the ALJ should have instead determined that he could not tolerate even such moderate exposures or explain why he departed from that aspect of the reviewers' determination.

The undersigned is not persuaded that the ALJ reversibly erred. As the discussion above demonstrates, the ALJ explained that the totality of the evidence was more consistent with the limits he incorporated into Plaintiff's RFC as they properly accounted for his various impairments, including his respiratory impairments. And the ALJ performed a subjective symptom assessment which included a detailed discussion of the objective evidence related to Plaintiff's respiratory impairments. He wrote as follows:

> The record in this case contains little objective evidence to support the claimant's reports of pain and functional loss. The claimant's medical history is significant for [COPD] (Exs. 13F/30, 34, 51). Pulmonary function studies predating the claimant's alleged onset date of disability revealed moderate pulmonary obstruction, his forced vital capacity (FVC) was normal and his post bronchodilation FVC was 4.31 and forced expiratory volume (FEV-1) was 2.1 liters (Ex. 3A/2). Additionally, a thorough review of the record fails to find the claimant was prescribed or taking any medications for this condition and associated symptomology until December 17, 2022, when he was prescribed Albuterol for shortness of breath and COPD exacerbation (Exs. 13F/33-35, 51). Moreover, the evidentiary record documents the claimant's consistent denial of symptoms, and examinations were unremarkable on many occasions throughout the record.

8

For example, the claimant denied cough and his lung bases were clear and his breathing nonlabored during a June 15, 2021 emergency department visit. His oxygen saturation rate was 96 percent. Examination found his lungs clear to auscultation with no respiratory distress or stridor. While imaging showed hyperinflated lungs, they were otherwise clear and pulmonary vascularity was normal. Computed tomography pulmonary angiogram found changes of emphysema. Additionally, positron emission tomography was recommended to exclude a scar carcinoma after computed tomography pulmonary angiogram found changes of emphysema and a spiculated nodule in the right lung apex (Exs. 7F/1; 13F/15, 19-21). The claimant attended a physical consultative examination on August 8, 2021 reporting chronic shortness of breath. He also noted he was no longer able to do household chores and the even vacuuming or going up and down stairs was quite distressing to him. Additionally, he claimed he was unable to walk his dog anymore secondary to dyspnea. His oxygen saturation rate was 96% on room air, his respiratory rate while sitting was 16 to 18 breaths per minute, and his lungs were clear to auscultation bilaterally. Consulting physician Larker Guinsler, D.O., noted the claimant was able to get out of his car in the parking lot and ambulate throughout the parking lot and lobby space while carrying a box of documents weighing between 5 and 10 pounds without any difficulty. He also noted the claimant's oxygen saturation rate was 96% after walking throughout the parking lot and lobby, and was not dyspneic by the time he sat down. Dr. Guinsler further noted the claimant was able to do all of the physical maneuvers asked of him without appearing dyspneic (Ex. 8F). The claimant denied cough, chest pain, shortness of breath, dyspnea, and fatigue on August 24, 2021. The claimant denied chest pain, edema, dyspnea and fatigue on August 24, 2021. Moreover, his oxygen saturation rate of was 99%, there was no chest tenderness, his respirations were easy and unlabored, and his lungs were clear to auscultation with no wheezing or rales (Ex. 9F/4, 7-8). The claimant's oxygen saturation rate of was 100% during a December 15, 2021 emergency department visit. Moreover, the claimant was in no respiratory distress and examination found normal pulmonary effort and breath sounds with no wheezing or rales (Ex. 13F/60, 62).

The claimant denied cough, dyspnea, edema, wheezing, chest pain and fatigue on January 28, 2022, February 25, 2022 and April 7, 2022. (Ex. 12F/2, 5, 11). The claimant sought treatment in the emergency department for shortness of breath and COPD exacerbation on December 17, 2022. He also noted two weeks of exertional dyspnea. His oxygen saturation rate of was 98%, and there was no evidence of hypoxia or impending respiratory failure. While there was diminished air exchange, there was no audible wheeze or stridor, no accessory muscle use or tachypnea, crackles, rhonchi, or rales. Imaging demonstrated some linear scarring within the upper lobes appearing similar to prior imaging and flattening of the hemidiaphragms. There was no lung consolidation or pleural effusion appreciated. The claimant felt better and denied chest pain or hemoptysis after receiving a Decadron injection, a burst of steroids, and nebulized treatment with DuoNeb. His emergency department physician also counseled the claimant to quit smoking and discharged the claimant in stable condition with prescriptions for Albuterol, Doxycycline, and Lasix (Ex. 13F/31, 33-35, 43, 51).

(R. 411–12.) (*sic*)

The ALJ's subjective symptom assessment also included the following discussion about Plaintiff's smoking habits.

> Finally, the evidentiary record shows the claimant has continued to smoke half a pack of cigarettes per day for over 35 years (Exs. 8F/7; 12F/7; 13F/34). While not dispositive, the claimant's longstanding daily cigarette smoking suggests tolerance for at least some exposure to environmental and respiratory irritants as well as usage of the upper extremities for feeling, fingering, and handling. This observation is not directed to the claimant's character; rather it indicates a daily activity that is inconsistent with the claimant's subjective complaints. To that extent only, I find that the claimant's cigarette smoking, when considered in combination with the other evidence of record and factors enumerated in SSR 16-3p, does not reasonably justify the imposition of functional limitations and restrictions for exposure to environmental and respiratory irritants, any greater than those herein from the alleged onset date of disability through the date of this decision.

(R. 415.)

An ALJ's opinion must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion evidence where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). As these excerpts demonstrate, the ALJ discussed the objective medical evidence related to Plaintiff's respiratory issues and his smoking history and concluded that limiting him to moderate exposures to respiratory irritants sufficiently accommodated his respiratory impairment. Plaintiff does not argue that the ALJ mischaracterized the objective evidence he discussed in his subjective symptom assessment under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Nor does Plaintiff argue that the ALJ mischaracterized or improperly considered his smoking habits. *Cf. Haning v. Comm'r of Soc. Sec.*, No. 2:2-cv-5918, 2021 WL 4704633, at *6 (S.D. Ohio Oct. 8, 2021) (finding no error where the ALJ relied on a claimant's continued tobacco use in evaluating the severity of the claimant's alleged disability arising from COPD).

Plaintiff asserts the ALJ's discussion about Plaintiff's smoking habits was exclusively related to the ALJ's subjective symptom assessment because the ALJ explicitly indicated that his discussion was so limited. (Pl's Reply 2, ECF No. 10). But a closer reading reveals that the ALJ actually indicated that his subjective symptom assessment was exclusively directed at the inconsistency between Plaintiff's smoking and his alleged inability to tolerate respiratory irritants as opposed to an assessment of Plaintiff's truthfulness. Moreover, the ALJ explained that "[t]o that extent only . . . [Plaintiff's] cigarette smoking, when considered in combination with the other evidence of record and factors enumerated in SSR 16-3p, does not reasonably justify the imposition of functional limitations and restrictions for exposure to environmental and respiratory irritants, any greater than those herein from the alleged onset date of disability through the date of this decision." (R. at 415.) The ALJ thus indicated that his discussion about Plaintiff's smoking played a role in determining the respiratory exposure limits—as opposed to other types of limits—that he ultimately included in Plaintiff's RFC, and not just the ALJ's subjective symptom assessment.

Accordingly, the undersigned concludes that the ALJ's decision, read as a whole, adequately explains how he considered the state agency reviewers' findings. The ALJ indicated that the totality of the evidence supported greater tolerance for exposure to respiratory irritants. The ALJ discussed that evidence at length, including objective medical evidence and Plaintiff's smoking habits, and Plaintiff does not challenge the accuracy of those discussions. Moreover, the ALJ's discussion when assessing the reviewers' findings was adequate—the ALJ was not required to restate the evidence about Plaintiff's respiratory impairments when he discussed the reviewers' findings. Plaintiff's contention of error lacks merit.

### B. The ALJ's Determination That Plaintiff Could Perform His Past Relevant Work

Plaintiff additionally contends that the ALJ committed reversible error at step four by finding that he could perform his past relevant work as a cleaner/housekeeper. Specifically, Plaintiff contends that the ALJ erred by relying on the VE's testimony without resolving conflicts between the VE's testimony and the DOT. (Pl's Statement of Errors 8, ECF No. 7.) This contention of error also lacks merit.

At step four, a claimant has the burden to establish that he is unable to perform his past relevant work given his RFC. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (explaining that a claimant challenging a finding that she was able to perform past relevant work had "fail[ed] to provide [the court] with the factual record [the court] need[ed] to find in her favor"). When evaluating whether a claimant can perform his past relevant work, an ALJ: (1) will ask the claimant for information about the past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT. 20 C.F.R. § 404.1560(b); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues."). "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. In addition, if an ALJ consults a VE, he must ask the VE if his testimony is consistent with the DOT and, if it is not, ask the VE to explain that conflict. *Id*. And, when such an explanation is given, the ALJ must explain how he resolved the conflict before relying on the VE's testimony. *Id*.

12

Here, the VE testified that one[6] of Plaintiff's past relevant jobs was a cleaner/housekeeper[7] (R. at 444.) The VE also testified that a hypothetical person with the limits set forth in Plaintiff's RFC—light work with no more than occasional exposure to dust, fumes, odors, gases or to poorly ventilated areas—could perform Plaintiff's past job of cleaner/housekeeper. (*Id.* at 445-46.) The ALJ subsequently asked the VE, "[W]as your testimony, except as noted, consistent with information found in the DOT," to which the VE answered, "Yes, sir." (*Id.* at 459.) The ALJ then relied on this testimony at step four to find that

---

[6] Although the VE discussed Plaintiff's other past positions, the ALJ only found that Plaintiff's cleaner/housecleaner position constituted past relevant work and that Plaintiff could perform it as generally performed. (R. at 416–17.)

[7] The DOT defines "Cleaner, Housekeep[er]" as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title . . . .

*Cleaner, Houskeeping*, DOT No. 323.687-014, *Dictionary of Occupational Titles* (4th Ed., Rev. 1991). Under the DOT, the Cleaner I master title is defined as follows:

> Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines. Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings. Washes walls, ceiling, and woodwork. Washes windows, door panels, and sills. Empties wastebaskets, and empties and cleans ashtrays. Transports trash and waste to disposal area. Replenishes bathroom supplies. Replaces light bulbs. Classifications are made according to type of establishment in which work is performed.

*Cleaner I*, Master Titles and Definitions, *Dictionary of Occupational Titles* (4th Ed., Rev. 1991).
.

13

Plaintiff could perform his past work as a cleaner/housecleaner, and thus, that Plaintiff was not disabled. (*Id*. at 416-17.)

Plaintiff nevertheless contends that the ALJ failed to resolve a conflict between the VE's testimony and the DOT. Plaintiff notes that in response to cross examination questions, the VE testified that although the DOT does not rate the cleaner/housecleaner position as one that entails exposure to atmospheric conditions, persons performing such work could, in fact, be exposed to aerosols. (*Id*. at 448-49.) Plaintiff contends that the ALJ was required to resolve this conflict.

The undersigned remains unconvinced. The following exchange took place between Plaintiff's counsel and the VE:

> A: Well, the DOT has actually – pardon, and the SCO, have very specific definitions of what constitutes atmospheric conditions. And I'm – I mean, I can pull them out and read them to you, but you know, they have – they look for, for instance, dust. In the DOT it's not household dust or anything – you know, a lot of things we would think of as dusty, would not be classified as dust. So –
>
> Q. Okay.
>
> A. – you know, fumes – fumes in the SCO are described as solid particles generated by condensation from the gaseous state. Dust – examples that they give off dust – again, solid particles generated by handling, crushing, grinding. So I think that their definitions are pretty rigorous.  So, there are –
>
> Q. Okay.
>
> A. – certainly jobs, you know, cleaners are exposed to aerosols and that sort of thing, but they –
>
> Q. Yeah.
>
> A. – just don't – the DOT doesn't classify those exposures.
>
> Q. Okay …. I want to try to ask you a hypothetical…
>
> A. Okay.
>
> Q. …I mean, if we are going to use the definition, I guess the layman's definition, fumes as in like car exhaust or dust as in like actual dust that would need to be cleaned off of the floor at a location, I mean somebody with a broom sweeping dust away, see. I don't know if that's a DOT way, but – but actual – kind of like the

> layman's understanding of what dust is. The Judge had asked you whether there was any exposure to those two things. Is it – would it be reasonable to assume that a person who would be underneath a car in an oil change place, or his job it is to actually clean dust out of location, might have some degree of exposure to those things?
>
> A. Well, it would – yeah, I mean, they're – obviously they would have exposure to – when you – as you said there, you know the layman's definition of what constitutes dust – and since it happens to be different than that at the Department of Labor recognizes, I mean they're looking at hazardous kinds of situations where as, you know, *for people who are very sensitive*, you know, in terms of home area irritants, *being a cleaner is not a great job because they're exposed to aerosols and there's stuff in the air and so forth*.
>
> Q. Okay.
>
> A. But, you know, it's not classified as hazardous exposure. That doesn't mean that everybody can tolerate it.

(*Id.* at 448–50.)

Thus, the VE indeed testified that the cleaner/housecleaner position might not be a "great job" for a person who was "very sensitive" to respiratory irritants even though the DOT did not include an exposure rating for that position. But the ALJ did not find that Plaintiff was "very sensitive" to respiratory irritants. Instead, as explained, the ALJ determined that based on the totality of the evidence, including objective medical evidence and Plaintiff's smoking habits, Plaintiff was able to tolerate moderate exposure to respiratory irritants. (*Id.* at 409.) And the VE earlier testified that a hypothetical person who could tolerate occasional exposure to respiratory irritants could perform the cleaner/housecleaner position. The ALJ relied on that earlier testimony at step four. The VE's later testimony about "very sensitive" persons is not inconsistent with his earlier testimony. Moreover, the VE was not asked about less sensitive persons.

Stated differently, it appears that there might be a conflict between the VE's testimony that cleaner/housecleaner might not be a great job for a "very sensitive" person and the DOT's

15

lack of a rating for respiratory irritants. But the ALJ did not find that Plaintiff was very sensitive, and the undersigned can find no authority that suggests that an ALJ must resolve an unrelated conflict. Plaintiff's claim to the contrary lacks merit.

## V. CONCLUSION and RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 7.)

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE